UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ERIK PINKARD
(#466763),

                Plaintiff,

v.

BHAMINI SUDHIR,

                Defendant.

_____/

Case No. 2:22-cv-11845

District Judge Denise Page Hood

Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT SUDHIR'S MOTION FOR SUMMARY JUDGMENT (ECF No. 23)

I.    **RECOMMENDATION**:  The Court should **GRANT** Defendant

Sudhir's motion for summary judgment (ECF No. 23).

II.    **REPORT**

    A.    **Background**

    Christopher Erik Pinkard is currently located at the Michigan Department

of Corrections (MDOC) Parnall Correctional Facility (SMT) in Jackson, MI.

(ECF No. 31, PageID.242.)  On August 8, 2022, while located at SMT, Plaintiff

filed the instant lawsuit, alleging he is a "severe asthmatic," suffers from a "wool

allergy," and was treated by Bhamini Sudhir, M.D., who "disregarded [his]

medical documents and refused to issue him a special accommodation to protect

1

[him] from having contact with woolen products." (ECF No. 1, ¶¶ 12-17.) (*See also* ECF Nos. 9, 11.) Alleging violations of the Eighth Amendment (*id.*, ¶¶ 1, 4, 19), Plaintiff seeks punitive and compensatory damages (*id.*, PageID.5 ¶¶ A, B). He has signed his complaint under penalty of perjury (*id.*, PageID.6). *See* 28 U.S.C. § 1746.

### B.    Pending Motion

Currently before the Court is Defendant Sudhir's November 17, 2023 motion for summary judgment (ECF No. 23), as to which a response was due on February 5, 2024 (ECF Nos. 24, 25, 26). Although Plaintiff's response was filed on February 12, 2024, it is dated February 5, 2024 (ECF No. 27, PageID.212); therefore, it is timely under the mailbox rule. *Houston v. Lack*, 487 U.S. 266, 276 (1988) ("the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.") (footnote omitted).

Defendant filed a reply (ECF No. 28), and this motion is now ready for decision.[1]

### C.    Standards

Defendant Sudhir bring her motion pursuant to Fed. R. Civ. P. 56. Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the

---

[1] Plaintiff's motion (ECF No. 29) to strike Defendant's reply (ECF No. 28) was denied on July 29, 2024 (ECF No. 33).

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the

3

material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

4

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### D.    Discussion

#### 1.    Allegations and evidence

Plaintiff is currently serving a state court sentence imposed on March 28, 2019.[2]  According to a May 13, 2019 MDOC Bureau of Health Care Services "treatment plan/review," Plaintiff's allergies include shellfish, iodine, codeine, and wool, the last of which causes "breathing difficulties."  (ECF No. 1, PageID.9; ECF No. 27, PageID.205.)  On February 10, 2020, Amy Roesler, R.N. documented allergies to iodine and codeine sulfate and also documented an "alert" for "wool allergy."  (ECF No. 23-1, PageID.145-146.)

#### a.    April 5, 2022 to June 1, 2022

The factual allegations underlying Plaintiff's complaint span the period

---

[2] *See* www.michigan.gov/corrections, "Offender Search," last visited July 31, 2024.

from his arrival at SMT (April 5, 2022) to the date he was given a cotton blanket
(June 1, 2022).  Plaintiff attests he arrived at SMT on April 5, 2022 and was
"given a bed roll which contained only sheets due to [his] wool allergy." (ECF
No. 27, PageID.208 ¶¶ 6, 7 [Pl.'s Affid.].)  On or about April 6, 2022, Plaintiff
completed a kite, claiming he was "having breathing problems because of [his]
wool allerg[y][;]" Kim Coburn, R.N.'s kite response stated:  "You have no
documented wool allergy in your chart.  Scheduled with nursing." (ECF No. 23-
1, PageID.126.)  (*See also* ECF No. 27, PageID.191 ¶ 1.)

Sudhir's administrative notes from an April 18, 2022 MDOC Clinical
Encounter indicate Plaintiff was a "no show" on April 18, 2022.  (ECF No. 23-1,
PageID.127-128.)  (*See also* ECF No. 23-2, PageID.148 ¶¶ 3, 4 [Def.'s Affid.].)
Plaintiff attests he "was held against [his] will" in Covid quarantine at the order
of SMT healthcare and "was never made aware that [he] had a medical provider
appointment . . . ."  (ECF No. 27, PageID.208 ¶ 8 [Pl.'s Affid.].)  (*See also* ECF
No. 27, PageID.192 ¶ 2; ECF No. 28, PageID.217 ¶ b.)

Plaintiff further recounts that, on April 19, 2022, Sudhir "disregarded
[Plaintiff's] medical documents and refused to issue him a special
accommodation to protect plaintiff from having contact with woolen products."
(ECF No. 1, ¶ 13.)  Medical records indicate that Plaintiff had a "clinical
encounter" with Corey Huff, R.N., at which Plaintiff stated:  "I have a[n] allergy

to wool.  I need a cotton blanket."  Huff made the following assessment:

> Inmate presents to clinic with a document stating a wool allergy causing breathing difficulties.  Inmate is requesting a <u>wool blanket</u>.  MD Sudhir spoke with inmate and gave him a detail to two <u>cotton blankets</u> at this time.  Will re assess need for <u>wool blanket</u> at an upcoming appointment.
>
> Inmate currently alert and oriented, calm and cooperative, walks with steady gait, eupn[e]ic respirations, denies chest pain, speech clear, good eye contact . . . .  Staff will continue to monitor.

(ECF No. 1, PageID.10 (emphases added).)  It seems likely that Huff's two references to "wool blanket" are scrivener's errors, because  it is clear Plaintiff was seeking a *cotton* blanket and his Plaintiff's April 19, 2022 *MDOC Prisoner Request for State-Issued Items* specifies two *cotton* blankets (ECF No. 23-4, PageID.162).  It also seems likely that Huff's reference to a detail for "two cotton *blankets*" is a scrivener's error, because an April 19, 2022 MDOC medical detail special accommodation of the same date specifies, "extra cotton *sheet* (two total)[,]" (*id*., PageID.11 (emphasis added)).  .  Similarly, it seems likely Sudhir's affidavit contains a scrivener's error, where she attests she "would reassess his need for [a] *wool* blanket at an upcoming appointment[,]" which must have been intended to consider his need for a "cotton blanket."  (*See* ECF No. 23-2, PageID.148 ¶ 7.)  (*See also* ECF No. 23-1, PageID.129-131; ECF No. 23-2, ¶¶ 5-8 [Def.'s Affid.]; ECF No. 27, PageID.192-193 ¶¶ 3, 4; ECF No.

27, PageID.208-210 ¶ 9 [Pl.'s Affid.]; ECF No. 28, PageID.217-218 ¶ c.)[3]

Plaintiff had another clinical encounter on May 28, 2022.  (ECF No. 1, PageID.17; ECF No. 23-1, PageID.132.)  Sudhir's notes indicate, *inter alia*: "RN Huff has noted that patient wanted cotton blanket and that I have given 2 cotton blankets[.]  [S]ince he had an upcoming appointment[,] I haven't given him any detail[.]  [And, in reference to Plaintiff's allegation that "'you kicked me out of the clinic'" or that Sudhir "refused to see him . . . [,]"] I don't recollect any incidence he is mentioning."  (*Id.*)[4]  Also, Sudhir noted she "told the patient to sign ROR [release of responsibility] and he refused."  (*Id.*)  (*See also* ECF No. 23-2, ¶¶ 9-11 [Def.'s Affid.].)  Plaintiff attests that, during this visit, Sudhir stated that, "if [he] wanted any accommodations from her that [he] need[ed] to sign off on the grievance [he] filed on her."  (ECF No. 27, PageID.210 ¶ 10 [Pl.'s Affid.].)  (*See also* ECF No. 27, PageID.193-194 ¶¶ 5, 6; ECF No. 28, PageID.218 ¶ d.)

Plaintiff alleges that, on June 1, 2022, he "was finally given a cotton

---

[3] Plaintiff completed a grievance form on April 20, 2022, mentioning Huff and Sudhir, but it was rejected at Step I as "vague, illegible, or contains multiple unrelated issues."  (*See* ECF No. 1, PageID.12-14 [SMT-22-04-0474-28C].)  Plaintiff filed Step II and Step III appeals, and, in each case, the response/rejection was upheld.  (*Id.*, PageID.15-16, 18-20.)

[4] To the extent Sudhir writes, "RN Huff has noted that patient wanted cotton blanket and that *I have given 2 cotton blankets*," (ECF No. 23-1, PageID.132), this seems to be an acknowledgment of Huff's April 19, 202 notes (*id.*, PageID.130) rather than an admission that Sudhir prescribed 2 cotton blankets.

blanket after having unnecessarily suffered for almost two full months."  (ECF No. 1, ¶ 15.)

### b.    July 26, 2022 to December 27, 2023

Defendant also attaches multiple records post-dating May 28, 2022, which she considers "relevant medical treatment *after* Dr. Sudhir's involvement." (ECF No. 23, PageID.113-116 ¶¶ 1-5 (emphasis added).)  On July 26, 2022, Plaintiff kited medical regarding head trauma pain, joint and ankle/knee pain, and a head injury, and also asked, "why aren't my special accommodations being met per policy?"  (ECF No. 23-1, PageID.134.)  According to Plaintiff, he "kited medical because [he] had suffered for months being in close proximity to wool and inquired as to why were the special accommodations not being met per M.D.O.C. policy."  (ECF No. 27, PageID.210 ¶ 11 [Pl.'s Affid.].)  In a same-day response, Kalee Ross, R.N. stated:  "You have an upcoming chronic care appointment you can address these at your next appointment.  If you would like to be seen sooner you will need to kite and ask for a nursing appointment, which is subject to $5 co-pay."  (ECF No. 23-1, PageID.134.)

Plaintiff appears to have discussed his wool allergy at an August 22, 2022 MDOC clinical encounter with Trinh Le, M.D., but the notes indicate:  "no documented evidence of true allergy to wool, MDS for wool allergy is not indicated."  (ECF No. 23-1, PageID.135-136.)  According to Plaintiff, Dr. Le

9

"would not provide [him] a[n] accommodations or a detail[,]" notwithstanding his explanation that corrections officers had taken the cotton blankets he got from the quartermaster on August 13, 2022, because he "didn't have a current detail from medical."  (ECF No. 27, PageID.210-211 ¶ 12 [Pl.'s Aff.].)

Plaintiff had another clinical encounter with Dr. Le on September 19, 2022.  (ECF No. 23-1, PageID.137.)  Plaintiff alleges that, when he mentioned his "wool allergy and the problems [he] was having in regards to that allergy, as well as the other medical issues [he] was having[,]" Dr. Le "changed the conversation and started asking [him] about psych medication and mental health problems [he] was having."  (ECF No. 27, PageID.211 ¶ 13 [Pl.'s Aff.].)  (*See also* ECF No. 27, PageID.194-195 ¶ 7.)

On September 20, 2022, Plaintiff completed a kite, mentioning, *inter alia*, that he had no blankets and was allergic to wool; Christina Vandenberg, R.N.'s September 23, 2022 response explained:  "Since you have been here, there is one documented kite regarding your wool allergy, and you received a response that there is no documentation that you have one (4-6-22) . . . ."  (ECF No. 23-1, PageID.138.)  Sheryl Gonzalez, N.P.'s notes from a September 27, 2022 encounter indicate that Plaintiff complained of "nausea associate with wool allergy[,]" and that Plaintiff was "repeatedly requesting wool blanket renewal[,]" – although the Court assumes this, too, was a scrivener's error, *i.e.*, intended to

be "cotton blanket" renewal – however, Gonzalez "reviewed MD provider note from [August 22, 2022][,]" and concluded there was "[n]o indication of detail for cotton blankets."  (ECF No. 23-1, PageID.140.)  (*See also* ECF No. 27, PageID.195 ¶ 8.)

On December 21, 2023, Plaintiff received a year-long medical detail special accommodation for an "extra sheet," and, on or about December 27, 2023, the ACMO approved a non-wool blanket.  (ECF No. 27, PageID.206.) Plaintiff attests the non-wool blanket approval "would never have been done" if he "didn't have a wool allergy . . . ."  (ECF No. 27, PageID.211 ¶ 14 [Pl.'s Affid.].)

### 2.    Eighth Amendment deliberate indifference

As noted above, Plaintiff's claim(s) against Sudhir are based on the Eighth Amendment, more specifically that Sudhir was deliberately indifferent to his health and safety when, "in spite of [his] well documented history of severe wool allergies and asthma," she "failed to treat and provide Plaintiff with special accommodations . . . that would limit his exposure to woolen items, such as blankets[,]" and her "disregard and negligence is a direct violation of the cruel and unusual punishment clause . . . ."  (ECF No. 1, ¶ 1; *see also id*., ¶¶ 4, 19.)

Sudhir argues "[t]here is no genuine dispute of material fact as to Mr. Pinkard's deliberate indifference claim[.]"  (ECF No. 23, PageID.117.)  "It is not .

11

. . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "[A] prison official violates the Eighth Amendment only when two requirements are met."  *Farmer*, 511 U.S. at 834.  "First, the deprivation alleged must be, objectively, 'sufficiently serious[.]'" (*Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).)  Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  Put another way, "[t]he Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong."  *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

### 3.    Objective

"In assessing the objective prong, we ask whether petitioners have provided evidence that they are 'incarcerated under conditions posing a substantial risk of serious harm.'"  *Wilson*, 961 F.3d at 840 (quoting *Farmer*, 511 U.S. at 834).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted).  In other

12

words, "the 'verifying medical evidence' requirement is relevant to those claims

involving minor maladies or non-obvious complaints of a serious need for medical

care." *Blackmore*, 390 F.3d at 898.  As the Sixth Circuit held:

> . . . where a plaintiff's claims arise from an injury or illness "so
> obvious that even a layperson would easily recognize the necessity for
> a doctor's attention," . . . the plaintiff need not present verifying
> medical evidence to show that, even after receiving the delayed
> necessary treatment, his medical condition worsened or deteriorated.
> Instead, it is sufficient to show that he actually experienced the need
> for medical treatment, and that the need was not addressed within a
> reasonable time frame.

*Blackmore*, 390 F.3d at 899–900 (internal citation omitted).

Sudhir argues "there can be no serious dispute that Mr. Pinkard's condition

fails to satisfy the objective component."  (ECF No. 23, PageID.120.)  With

reference to the "relevant portions of Plaintiff's MDOC medical record," (*see* ECF

No. 23, PageID.107 & ECF No. 23-2), Defendant Sudhir notes that Plaintiff "was

seen and examined by a vast array of medical providers, none of whom diagnosed

him with a wool allergy."  (ECF No. 23, PageID.120.)  Sudhir contends that,

"during the timeframe alleged in his Complaint," *i.e.*, April 5, 2022 to June 1,

2022, "Mr. Pinkard does not complain of or suffer from any of the alleged

symptoms from being in close proximity to wool[,]" (ECF No. 23, PageID.120),

although the Court notes the May 13, 2019 MDOC Bureau of Health Care Services

"treatment plan/review," which includes "wool" on the list of allergies and

"breathing difficulties" as the related reaction (ECF No. 1, PageID.9; ECF No. 27,

PageID.205). (ECF No. 23, PageID.120.)[5] After referencing medical records dated April 19, 2022 (*see* ECF No. 1, PageID.10-11; ECF No. 23-1, PageID.129-131; ECF No. 23-4, PageID.162), Defendant Sudhir contends Plaintiff's medical records are "devoid of a diagnosis or indication of a wool allergy," and "void of any indication of complications arising from the alleged denial of Mr. Pinkard's special accommodations detail for a cotton blanket." (ECF No. 23, PageID.121.)

While Defendant Sudir contends Plaintiff's records "do not give rise to any indication that he suffered from a sufficiently serious medical condition to be issued a cotton blanket detail, or a condition that corroborates with his allegations that the lack of the detail led him to an adverse health outcome[,]" (ECF No. 23, PageID.122), Plaintiff contends there can be no dispute that he "was diagnosed with asthma and uses a[n] inhaler[,]" and that he "has a wool allergy that causes additional breathing difficulties on top of the already present asthma[,]" (ECF No. 27, PageID.198), in support of which he cites the May 13, 2019 treatment

---

[5] *See also Pann v. Corizon Health Servs.*, No. 1:14-CV-1074, 2017 WL 1298032, *6 (W.D. Mich. Jan. 13, 2017) (Carmody, M.J.) ("A review of the medical evidence fails to reveal that Plaintiff suffers from a wool allergy or other condition making denial of a cotton blanket cruel and unusual punishment. . . . The Court recognizes that Plaintiff had previously been afforded a cotton blanket accommodation. . . . The Orders implementing this accommodation, however, do not indicate whether such was medically necessary or merely a courtesy extended to Plaintiff. . . . Again, the evidence reveals merely that Plaintiff disagrees with the treatment decisions made by Defendants in the exercise of their professional judgment. Such disagreement does not implicate the Eighth Amendment.") (internal citations omitted), *report and recommendation adopted as modified*, No. 1:14-CV-1074, 2017 WL 1130021 (W.D. Mich. Mar. 27, 2017) (Neff, J.). (ECF No. 23-3, PageID.154, 156-157.)

plan/review (ECF No. 27, PageID.205), Amy Roesler, R.N.'s February 10, 2020 "alert" for a "wool allergy," (ECF No. 23-1, PageID.146), and Sheryl Gonzalez, N.P.'s September 27, 2022 medical notes (ECF No. 23-1, PageID.139-144).

Clearly, the parties dispute not only whether Plaintiff had a wool allergy, but also whether the alleged wool allergy was a "serious medical need during Defendant's care and treatment of Plaintiff[,]" (ECF No. 28, PageID.219 ¶ e). Nonetheless, the Court need not resolve the issue of whether Plaintiff has satisfied the objective component of his Eighth Amendment deliberate indifference claim. Even assuming Plaintiff's alleged wool allergy is a serious medical need satisfying the objective prong, the evidence – as will be discussed below – does not support a conclusion that Defendant Sudhir acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). *See Crowell v. Parsons*, No. 2:14-CV-44, 2016 WL 2892670, at *9 (W.D. Mich. May 18, 2016) (assuming Crowell's wool allergy, among other conditions, was a serious medical need "satisfying the objective component of his deliberate indifference claim," but finding Plaintiff's claim against Defendant Westcomb still failed since he "ha[d] not satisfied the subjective component (that Defendant acted with a culpable state of mind when refusing to treat Plaintiff)."), *aff'd*, No. 16-1811, 2017 WL 11779104 (6th Cir. Feb. 3, 2017).

### 4.    Subjective

Sudhir argues that Pinkard "has failed to produce evidence that Dr. Sudhir was deliberately indifferent to his serious medical needs." (ECF No. 23, PageID.123.) As the Sixth Circuit has explained:

> Under the subjective prong, an official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety. [I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk. [P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

*Wilson*, 961 F.3d at 840 (internal quotations and citations to *Farmer*, 511 U.S. at 836, 837, 842, 844 omitted). Furthermore, the Sixth Circuit distinguishes between "cases where the complaint alleges a complete denial of medical care" and "those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover:

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. . . . Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all.

*Westlake*, 537 F.2d at 860 n.5 (internal and external citations omitted).

In the Undersigned's view, this an "adequacy of treatment" case, based on Plaintiff's allegations about his April 19, 2022 visit with Sudhir (ECF No. 1, ¶ 13) and

16

the pleading's attachments, which include same-day medical records (ECF No. 1, PageID.10-11) and Sudhir's May 28, 2022 administrative notes (*id*., PageID.17; ECF No. 23-1, PageID.132).  In other words, "this is not a case involving cursory treatment amounting to no treatment at all."  *Rhinehart v. Scutt*, 894 F.3d 721, 739 (6th Cir. 2018). (ECF No. 23, PageID.124.)

In Defendant's motion, she argues that, at most, Plaintiff's claims amount to "a mere disagreement with Dr. Sudhir's professional medical judgment[,]" (ECF No. 23, PageID.123-124), in support of which she alludes to the April 19, 2022 cotton sheet accommodation (*see* ECF No. 1, PageID.10-11; ECF No. 23-1, PageID.129-131) and cites her administrative notes from a May 28, 2022 MDOC Clinical Encounter (*see* ECF No. 1, PageID.17; ECF No. 23-1, PageID.132).  (*See also* ECF No. 28, PageID.219-220 ¶ e.)  In his motion response, Plaintiff contends that Sudhir was deliberately indifferent when she failed to provide accommodations for Plaintiff's serious medical needs, explaining:  "Defendant reviewed documentation of [Plaintiff's] wool allergy, and documentation of him having asthma and yet refused to provide him accommodations, even in the face of him complaining of having breathing difficulties and chest pains among other things."  (ECF No. 27, PageID.196-197.)  Plaintiff contends there is no dispute that Sudhir "was fully aware of these conditions[,]" *i.e.*, his asthma and wool allergy (ECF No. 27, PageID.198), and, within the subjective component portion of his argument, refers to, *inter alia*, records dated April 18, 2022, April 19, 2022, and perhaps

17

also May 28, 2022 (*see* ECF No. 23-1, PageID.127-129, 131, 132).  (ECF No. 27, PageID.200-201.)

Considering Sudhir is the sole defendant in this case, and further considering Sudhir's involvement appears to be limited to the dates of April 18, 2022, April 19, 2022, and May 28, 2022 – an observation that is buttressed by Plaintiff's June 2, 2022 kite, which sought "healthcare records for April 19, 2022 only, and May 28, 2022 only and the doctor and nurse who s[aw] [Plaintiff] on those days[,]" (ECF No. 23-1, PageID.133) – this report's discussion of the subjective component is focused on those dates.

### a.    April 18, 2022

Preliminarily, any debate about why Plaintiff was a "no show" for an April 18, 2022 appointment with Dr. Sudhir (*see* ECF No. 23-1, PageID.127-128) is marginal, as Plaintiff was seen the next day.  (*Compare*, *e.g.*, ECF No. 23-2, PageID.148 ¶¶ 3, 4 [Def.'s Affid.]; *with*, ECF No. 27, PageID.208 ¶ 8 [Pl.'s Affid.].)  (*See also* ECF No. 27, PageID.192 ¶ 2; ECF No. 28, PageID.217 ¶ b.)

### b.    April 19, 2022

More to the point, Nurse Huff's April 19, 2022 records (*see* ECF No. 23-1, PageID.130), coupled with Sudhir's affidavit regarding that same date (*see* ECF No. 23-2, PageID.148 ¶¶ 5-8), indicate that Plaintiff's "need for [a] [cotton] blanket" would be reassessed "at an upcoming appointment[,]" (*id.*, ¶ 7).  Meanwhile, Plaintiff was issued a

detail for an "extra cotton sheet (two total)[.]"  (ECF No. 23-1, PageID.131.)  (*See also* ECF No. 1, PageID.10-11.)  As Defendant notes in her reply:  "[I] provided Plaintiff with two cotton *blankets* as documented by RN Huff[,]" (ECF No. 28, PageID.219 (emphasis added)), which the Court presumes was intended as a reference to the April 19, 2022 detail for an "extra cotton *sheet* (two total)[,]" (ECF No. 23-1, PageID.131 (emphasis added)).

Based on the April 19, 2022 medical records (ECF No. 1, PageID.10-11 & ECF No. 23-1, PageID.130-131), as well as Defendant's related attestations (ECF No. 23-2, PageID.148 ¶¶ 5-8), it is clear that Sudhir was aware in April 2022 of *at least* Plaintiff's complaint of a wool allergy, and, it also seems she was behind the detail for an extra cotton sheet (ECF No. 1, PageID.11 & ECF No. 23-1, PageID.131).  If Plaintiff disagrees with the provision of an extra cotton sheet (instead of a cotton blanket), then this is akin to "a mere disagreement with Dr. Sudhir's professional medical judgment." (ECF No. 23, PageID.123.)  The evidence before the Court does not support a conclusion that, on April 19, 2022, Defendant Sudhir acted with a "'sufficiently culpable state of mind.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).

### c.      Documentation of a wool allergy

Plaintiff argues that Sudhir "misrepresented evidence and falsified her sworn affidavit in effort to mislead the Court . . . ." (ECF No. 27, PageID.200.)  Here, the Court suspects Plaintiff challenges Defendant's reliance – within an *introductory* portion

of her motion – on:

- Kim Coburn, R.N.'s April 6, 2022 statement, "You have no documented wool allergy in your chart[,]" (ECF No. 23-1, PageID.126);

- Trinh Le, M.D.'s August 22, 2022 statements, "[t]here are no documentations that shows any evidence of wool allergy[,]" and "[t]here are no documentations regarding MP evaluation for any evidence of wool allergy[,]" (*id.*, PageID.135-136);

- Christina Vandenberg, R.N.'s September 23, 2022 statement: "Since you have been here, there is one documented kite regarding your wool allergy, and you received a response that there is no documentation that you have one (4-6-22)[,]" (*id.*, PageID.138); and/or,

(*See* ECF No. 23, PageID.111 ¶ 1; *id.*, PageID.114-115 ¶¶ 3-4.)

Plaintiff also seems to be challenging Defendant's arguments that "there is no indication anywhere in his medical record that Mr. Pinkard suffers from a wool allergy . . . [,]" (ECF No. 23, PageID.120), or that "during his appointment with Dr. Sudhir, Mr. Pinkard does not report any breathing complications, shortness of breath, or anxiety attacks as he alleges in his complaint[,]" (*id.*, PageID.123); however , the Court assumes that each of these statements refers to Defendant's attestation that, during her care and treatment of Plaintiff, "he did not report any breathing complications, shortness of breath, or anxiety attacks[,]" (ECF No. 23-2, PageID.150 ¶ 14).

Preliminarily, as will be stated again below, the Court is not under the mistaken belief that Plaintiff's alleged "wool allergy" and related symptoms have never been mentioned in his MDOC medical record, and Plaintiff may rest assured that the Court

20

has independently considered the medical records, rather than just adopting Defendant's interpretation or summary of the medical records.

Turning to Plaintiff's misrepresentation / falsification argument, it is unavailing. First, the Court is not convinced that Defendant *misrepresented* evidence. To counter Sudhir's claim that "there was no documentation of [a wool] allergy[,]" Plaintiff contends that, if Sudhir had performed a chart review on April 18, 2022 or April 19, 2022 (ECF No. 23-1, PageID.127-129), "she would've seen the medical alert that she submitted as part of her evidence[,]" namely Nurse Roesler's February 10, 2020 "wool allergy" alert (*see* ECF No. 23-1, PageID.145-146), and perhaps also the May 13, 2019 MDOC treatment plan/review attached to his filings, which lists "wool" as an allergy and "breathing difficulties" as a reaction (*see* ECF No. 1, PageID.9; ECF No. 27, PageID.205). (ECF No. 27, PageID.200.)[6] However, at most, Plaintiff's misrepresentation argument points out *inconsistencies* in the evidence. Perhaps more importantly, even if Dr. Sudhir had seen these notes – *each of which pre-dates Plaintiff's alleged April 5, 2022 arrival at SMT* – Nurse Huff's April 19, 2022 records (*see* ECF No. 23-1, PageID.130), coupled with Sudhir's affidavit regarding that same date (*see* ECF No. 23-2, PageID.148 ¶¶ 5-8), are evidence that Sudhir "would reassess [Plaintiff's] need for [a] [cotton] blanket at an upcoming appointment[,]" (*id.*, ¶ 7). In other words,

---

[6] Plaintiff also refers to Gonzalez's records from September 27, 2022 as evidence that he had asthma and was taking albuterol (*see* ECF No. 23-1, PageID.143), but these notes post-date Sudir's April 2022 chart reviews (*see id.*, PageID.127-129). (ECF No. 27, PageID.200.)

Sudhir would not have noted on April 19, 2022 an intention to reassess if she did not have the underlying knowledge of Plaintiff's alleged wool allergy and/or request for a cotton blanket. More importantly, this intention to reassess does not show indifference; to the contrary, it shows recognition and attentiveness. Meanwhile, Plaintiff was issued a detail for an "extra cotton sheet (two total)[.]" (ECF No. 23-1, PageID.131.) (*See also* ECF No. 1, PageID.10-11.)

Second, the Court is not convinced that Sudhir *falsified* her affidavit. In support of his claim that Sudhir "blatantly lied in her affidavit trying to act as if she was unaware of the Plaintiff's condition[,]" Plaintiff contends Sudhir "was well abreasted [sic] about the Plaintiff's condition and purposely refused to provide him accommodations[,]" (ECF No. 27, PageID.200), in support of which Plaintiff: (i) alludes to the April 19, 2022 cotton sheet detail (*see* ECF No. 1, PageID.10-11); and, (ii) references his affidavit regarding the events of April 19, 2022, wherein he attests the quartermaster told him she saw "a wool allergy in the computer[,]" and attests the quartermaster "walked away from the counter and came back shortly with 2 cotton blankets[,]" (*see* ECF No. 27, PageID.208-210 ¶ 9 [Pl.'s Affid.]). However, as with Plaintiff's misrepresentation argument, at most, Plaintiff's falsification argument points out *inconsistencies* in the evidence; his assertions that Sudhir "blatantly lied" in her affidavit or "purposely refused" the accommodations are speculative as to her intent.

In the end, Plaintiff contends he "suffered many months of breathing

complications[,]" which were "evident in the whole of the exhibits Dr. Sudhir

submitted."  (ECF No. 27, PageID.200.)  Nonetheless, as the Supreme Court has

explained:

> Rule 56(e) provides that judgment "shall be entered" against the
> nonmoving party unless affidavits or other evidence "set forth specific
> facts showing that there is a genuine issue for trial."  The object of this
> provision is not to replace conclusory allegations of the complaint or
> answer with conclusory allegations of an affidavit.  *Cf. Anderson v.
> Liberty Lobby, Inc.*, 477 U.S. 242, 249 . . . (1986) ("[T]he plaintiff could
> not rest on his allegations of a conspiracy to get to a jury without 'any
> significant probative evidence tending to support the complaint'"),
> *quoting First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253,
> 290 . . . (1968).  Rather, the purpose of Rule 56 is to enable a party who
> believes there is no genuine dispute as to a specific fact essential to the
> other side's case to demand at least one sworn averment of that fact
> before the lengthy process of litigation continues.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).  Here, as Sudhir accurately

contends in her reply, Plaintiff "presents nothing more than his unsupported opinion that

his medical records were *falsified* and Defendant *perjured* herself in her Affidavit."

(ECF No. 28, PageID.216-217 ¶ a (emphases added).)

### d.    Failure to address certain allegations

Plaintiff also argues that Sudhir did not address his complaint in its entirety,

namely "lines 14, and 16 . . . [,]" (ECF No. 27, PageID.201); undoubtedly, these are

references to Paragraphs 14 and 16 of the pleading, each of which addresses the period

from "4/5/22 to 6/1/22[.]"  (ECF No. 1, ¶¶ 14, 16.)  As to this period – which represents

Plaintiff's arrival at SMT (April 5, 2022) to the date he was given a cotton blanket (June

1, 2022) – Plaintiff expressly alleges he:

- was forced to bunk in close proximity to woolen blankets which covered the bunks of the five other cellmates occupying his housing cube, causing him to suffer breathing complications and chest pains and swelling of the eye's [sic] and throat, without any relief.

- has been forced to bunk with wool and inhale wool, and endure lack of sleep, tightening of the chest, reddening of the eyes, continuous asthma attacks, and non-stop pain, due to the defendant's failure to issue a special accommodation to protect the plaintiff from coming into contact with wool, even amidst such well documentation [sic] of said allergies and medical complications.

(*Id.*)

Plaintiff's suggestion that the allegations in Paragraphs 14 and 16 are undisputed is inaccurate. In fact, Defendant Sudhir's motion referenced the content of ¶ 14 within her argument's discussion of the objective component, followed by the sentence: "It is evident from his medical records that during the timeframe alleged in his Complaint, Mr. Pinkard does not complaint of or suffer from any of the alleged symptoms from being in close proximity to wool." (*See* ECF No. 23, PageID.120 (citing ECF No. 1, PageID.4).) Then, as support for the statement, "there is no indication anywhere in his medical record that Mr. Pinkard suffers from a wool allergy[,]" (ECF No. 23, PageID.120), Sudhir cites the following portion of her affidavit:

During my care and treatment of Mr. Pinkard, he did not report any breathing complications, shortness of breath, or anxiety attacks. If he had, I would have treated his symptoms using my medical judgment. If he complained of any psychological distress, I would have referred him to mental health.

24

(ECF No. 23-2 ¶ 14 [Def.'s Affid.].)

While Plaintiff's argument's *headline* suggests that Defendant Sudhir does not

"dispute . . . some of the allegations brought by the Plaintiff . . . [,]" the argument's

*content* suggests Plaintiff is challenging Sudhir's claims that:  (i) she provided him with

"2 cotton blankets[;]" or, (ii) he "had no documented wool allergy."  (ECF No. 27,

PageID.201.)  As for the provision of blankets, the Court is aware that Nurse Huff's

April 19, 2022 notes reflect that "MD Sudhir spoke with inmate and gave him a detail to

two cotton blankets at this time[,]" (ECF No. 23-1, PageID.130), and that the

corresponding same-day medical detail is for "extra cotton sheet (two total)[,]" (*id.*,

PageID.131).  However, Sudhir has explained this discrepancy:

- I ordered Mr. Pinkard be provided with a detail for two cotton sheets.  I noted I would reassess his need for [a] [cotton] blanket at an upcoming appointment.

- While RN Huff charted that Mr. Pinkard was provided with two cotton blankets, I gave orders for Mr. Pinkard to be provided with two cotton sheets until I could further assess his need.

(ECF No. 23-2, PageID.148 ¶¶ 7, 8.)  Accordingly, the Court is not under the mistaken

belief that Sudhir provided Plaintiff with two cotton blankets.

As for the documentation of his allergy, the Court is aware of the May 13, 2019

treatment plan/review, which lists "wool" as an allergy and "breathing difficulties" as a

"reaction," (ECF No. 1, PageID.9) and Nurse Roesler's February 10, 2020 "wool

allergy" alert (ECF No. 23-1, PageID.146), as well as Plaintiff's wool allergy complaints

25

in April 2022 (*id.*, PageID.126, 130).  (*See also id.*, PageID.135-136 [August 22, 2022];

*id.*, PageID.138, 140 [September 2022].)  Accordingly, the Court is not under the

mistaken belief that Plaintiff's alleged "wool allergy" and related symptoms have never

been mentioned in his MDOC medical record, and Plaintiff may rest assured that the

Court has independently considered the medical records, rather than just adopting

Defendant's interpretation or summary of the medical records.

### e.  May 28, 2022

Finally, Plaintiff contends Sudir could have either "change[d] out the prisoners in

the Plaintiff's cell who had wool blankets with cotton blankets[,]" or "placed [Plaintiff]

in a single man cell[,]" either of which "can only be done through a medical

accommodation."  (ECF No. 27, PageID.201.)  Plaintiff seems to have derived this

information from his April 19, 2022 interaction with Nurse Huff.  (*See* ECF No. 27,

PageID.208 ¶ 9 [Pl.'s Affid.].)  Perhaps this is Plaintiff's way of challenging why it took

from his April 5, 2022 arrival at SMT to June 1, 2022 to receive a cotton blanket (*see*

ECF No. 1, ¶¶ 14-16).

To be sure, it seems Plaintiff may have received cotton blankets from the

quartermaster before June 1, 2022, even if it was only discretionary, although it also

seems the blankets were taken from Plaintiff in August 2022.[7]  In any event, in her reply,

---

[7] Plaintiff's affidavit suggests that he received a blanket from the quartermaster on or about April 19, 2022 (ECF No. 27, PageID.209-210 ¶ 9) but that corrections officers "took the cotton blankets [he] got form the quartermaster on August 13, 2022, because [he] didn't have a current detail from medical[,]" (ECF No. 27, PageID.210-

Sudhir seems to suggest that Plaintiff is at least somewhat responsible for any delay, asserting that:

- When Defendant examined Plaintiff on May 28, 2022, Plaintiff refused to be evaluated by Defendant, which prevented her from evaluating his symptoms and formulating a treatment plan.

- Defendant was prevented from evaluating Plaintiff due to his own actions.

- Defendant did not refuse Plaintiff treatment[;] he simply did not want to be treated by Defendant on May 28, 2022.

(ECF No. 28, PageID.219 ¶ e.)

It is clear the parties have differing versions of the interaction between Plaintiff and Sudhir on May 28, 2022. Sudhir's May 28, 2022 administrative notes state, *inter alia*:

Patient scheduled to f/u per RNR for migraine.
Patient walks in and he doesn't want to be evaluated by this MP, he states that 'you kicked me out of the clinic', he states that he has grievance on me already.

(ECF No. 1, PageID.17; ECF No. 23-1, PageID.132.)  Moreover, Sudhir attests:

I documented that I did not recall the incident he was mentioning and that I noted his last no-show appointment, which was rescheduled for this appointment.  I asked if he would sign a release of responsibility and he refused.  I noted Mr. Pinkard had a chronic care appointment in August and added his current issues to the scheduled appointment.

(ECF No. 23-2, PageID.149 ¶ 11.)  On the other hand, Plaintiff describes the events of May 28, 2022 as follows:

_____

211 ¶ 12).

27

. . . I walked to medical as a result of receiving an itinerary that had a medical callout.  When I got to medical[,] I handed my itinerary to the medical corrections officer and asked who was the medical provider I was scheduled to see.  The officer told me Dr. Sudhir.

When I was called back to see Dr. Sudhir[,] I followed the nurse to her[,] Dr. Sudhir.  I came in[,] sat down[,] and Dr. Sudhir confronted me about the grievance I filed on her.  She stated to me that if I wanted any accommodations from her that I need to sign off on the grievance I filed on her.  She [said] if I don't[,] then she was not going to do anything for me.  I told her I wasn't going to sign off on the grievance, and she responded to me, then you can leave.  For the record[,] I was never asked to sign a ROR.

(ECF No. 27, PageID.210 ¶ 10.)

Preliminarily, it would seem Plaintiff is referring to SMT-22-04-0474-28C, which lists an incident date of April 19, 2022, was received at Step I on April 21, 2022 and rejected that same day, was received at Step II on May 18, 2022, and was upheld at Step II on June 2, 2022.  (ECF No. 1, PageID.12-16, 18-20.)  It seems the only form with a signature line for the Grievant is the Step I grievance form, which was rejected at Step I for having "multiple issues," was returned to Plaintiff on May 5, 2022, and is blank on the Grievant's Signature line.  (*Id*., PageID.12-13.)  Moreover, Plaintiff's Step II appeal was received on May 18, 2022 and answered on June 2, 2022.  (*Id*., PageID.15-16, 18.)  Thus, the Court wonders what grievance-related item he would have had to "sign off on" on May 28, 2022.

More importantly, having considered Sudhir's May 28, 2022 administrative notes (ECF No. 1, PageID.17; ECF No. 23-1, PageID.132), the related portion of her affidavit

(ECF No. 23-2, PageID.149 ¶¶ 9-11), and Plaintiff's related attestation (ECF No. 27, PageID.210 ¶ 10), it seems clear Plaintiff and Defendant Sudhir saw each other in person on May 28, 2022.  Although there is a dispute about Plaintiff's signature – *i.e.*, Defendant says Plaintiff refused to sign a release of responsibility, while Plaintiff says Sudhir conditioned her assistance on Plaintiff's willingness to sign off on his grievance against her – the allegations in his complaint reflect that he received a cotton blanket four days later, on June 1, 2022 (ECF No. 1, ¶ 15), which completely contradicts the notion that Sudhir stymied Plaintiff's ability to secure a cotton blanket.  Likewise, as the following section details, there is evidence that Plaintiff was treated after Sudhir's involvement, *e.g.*, by Trinh Le, M.D. on August 22, 2022 and September 19, 2022 (ECF No. 23-1, PageID.135-137).  The evidence before the Court does not support a conclusion that, on May 28, 2022, Defendant Sudhir acted with deliberate indifference to a medical need, as Plaintiff has not shown a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).

> **5.**   **Evidence post-dating Dr. Sudhir's involvement (July 26, 2022 to December 27, 2023)**

As set forth above in Section II.D.1.b, the parties have submitted evidence post-dating Dr. Sudhir's involvement.  To the extent Plaintiff's response provides the Court with a copy of the December 27, 2023 ACMO non-wool blanket approval (ECF No. 27, PageID.206), and to the extent Plaintiff attests "it took so long to be done due to the spite and vindictiveness of Dr. Sudhir, and her colleague Dr. Le[,]" (ECF No. 27, PageID.211

¶ 14 [Pl.'s Affid.]), this medical record is well beyond the factual allegations of Plaintiff's pleading, as Plaintiff alleges: "On [June 1, 2022], [he] was finally given a cotton blanket after having unnecessarily suffered for almost two full months." (ECF No. 1, ¶ 15; *see also id.*, ¶¶ 14, 16.)

Even if Plaintiff's pre-complaint receipt of cotton blankets was discretionary, the Court will not automatically attribute the blankets' post-complaint removal to Sudhir's failure to provide an official cotton blanket accommodation on May 28, 2022, which was Sudhir's last apparent interaction with Plaintiff.[8]  Put another way, having referred to the period from April 5, 2022 to June 1, 2022, when Plaintiff "was finally given a cotton blanket after having unnecessarily suffered for almost two full months[,]" (ECF No. 1, ¶¶ 14-16), Plaintiff's *August 8, 2022* complaint against Sudhir could not complain about the corrections officers' alleged *August 13, 2022* removal of those blankets.  This is so, even if Plaintiff did not receive a "non-wool blanket" detail until December 27, 2023 (ECF No. 27, PageID.206).

### E.    Conclusion

Plaintiff concludes by arguing that "[t]he record is devoid of Dr. Sudhir providing the Plaintiff cotton blankets, or the proper accommodations to keep wool out [of] close proximity to the Plaintiff[,]" and further contends Sudhir "knowingly refused to provide him accommodations unless he signed off of the grievance he

---

[8] As discussed above, the July 2022, August 2022, and September 2022 records involved other medical professionals.  (*See* ECF No. 23-1, PageID.134-144.)

filed on her." (ECF No. 27, PageID.201.)  Nonetheless, the evidence before the

Court does not support a conclusion that Defendant Sudhir acted with a

"'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*,

501 U.S. at 297).  Accordingly, the Court should **GRANT** Defendant Sudhir's

motion for summary judgment (ECF No. 23).

## 6.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2,"

*etc*. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: August 6, 2024

                                              Anthony P. Patti
                                              United States Magistrate Judge